IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA,

v.                                      Case No. 5:03cr33/MCR/CJK
                                                 5:09cv135/MCR/CJK
DAVID E. MARTINELLI,
        **Defendant**.

_____

<u>ORDER AND</u>
<u>SECOND AMENDED REPORT AND RECOMMENDATION</u>

This matter is before the court upon defendant's amended motion to vacate, set aside, or correct sentence (doc. 362), filed pursuant to 28 U.S.C. § 2255, and motion to amend "in relation back" (doc. 392).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and NORTHERN DISTRICT OF FLORIDA LOCAL RULE 72.2(B).  Having conducted a careful review of the record and the arguments presented, the undersigned concludes that the motions should be denied.

FACTUAL & PROCEDURAL BACKGROUND

The defendant, David Martinelli, was charged with conspiring to launder money, in violation of 18 U.S.C. § 1956(a)(1) and (h).  (Doc. 1)  Defendant's conviction stems from his apparent involvement in a mail fraud and money laundering conspiracy.  In 1995, defendant and two associates formed Global Business Services, Inc. (GBS), "a corporation purportedly designed to facilitate the sale of small businesses by putting hopeful sellers in contact with willing buyers."

*See United States v. Martinelli*, 454 F.3d 1300, 1303 (11th Cir. 2006).  "GBS would randomly send letters to small-business owners, attempting to locate those who were interested in selling their business."  *Id.*  "When a potential seller responded, a GBS representative would meet with the client and gather information about the business."  *Id.*  "The representative would explain that GBS placed generic advertising in national publications representing that it had businesses for sale; when interested buyers responded, GBS would attempt to match them with compatible sellers."  *Id.*

"A seller was required to sign a contract whereby it agreed to pay GBS a certain percentage of the total value of the business in exchange for the advertising."  *Id.*  Donald Cox, the original President and CEO of GBS, testified at trial for the government, explaining that "clients had to immediately pay a small percentage, 'around 2 percent,' and then an additional '5 to 7 percent' if the business actually sold."  *Id.*  "The government also presented evidence of initial fees ranging from $1,900 to $16,900."  *Id.*  "The contracts stated that GBS would provide advertising until the business sold, but did not guarantee an actual sale."  *Id.*  "Mr. Cox stayed with GBS for slightly under twelve months and testified that, during this time, GBS did not facilitate the sale of a single business."  *Id.*

Cox also testified concerning numerous intentional and material misrepresentations made by GBS, stating that "GBS sent direct mailings to small-business owners with testimonials from allegedly satisfied customers describing how GBS helped to sell their businesses."  *Id.*  In fact, there were no such customers: "the people pictured in the representations were actually Martinelli and other GBS employees."  *See id.*  Cox, moreover, described how "GBS represented in its mailings to putative sellers that *all* of its buyers were prequalified to ensure they

had the financial ability to purchase a business when, in fact, such screening was discontinued soon after GBS was formed." *Id.* at 1303-04. Further, Cox testified that "GBS touted that it used a sophisticated computer matching system to bring together compatible buyers and sellers." *Id.* at 1304. "Actually, at least initially, GBS had no computers at all, and all buyers and sellers were manually logged in record books." *Id.*

After a three-day jury trial, defendant was convicted as charged on April 26, 2004. (Doc. 155) In a special forfeiture verdict, the jury found that $4.4 million was involved in and traceable to property involved in the money laundering violation. (Doc. 157) As directed by U.S. SENTENCING GUIDELINES MANUAL § 1B1.11, a presentence report (PSR) was prepared using the 2000 version of the manual. (PSR para. 17) After applying § 2S1.1(a)(1), the court determined that Martinelli registered a level 23 base offense, because he had been convicted of violating § 1956(a)(1) and (h). (PSR para. 18) The sentencing court increased the offense level to 35 to reflect defendant's leadership role in the conspiracy, as well as a $6.5 million loss. (PSR para. 19, 21, 27) On August 2, 2004, the District Court sentenced defendant to a term of 210 months in prison, a $150,000 fine, a $4.4 million criminal forfeiture, and a three-year period of supervised release. (Doc. 197)

The United States Court of Appeals for the Eleventh Circuit (Eleventh Circuit) affirmed defendant's conviction, but remanded the case for resentencing in accordance with *United States v. Booker*, 543 U.S. 220 (2005). *See Martinelli*, 454 F.3d at 1303. At the resentencing hearing, the court again sentenced defendant to a term of 210 months in prison, using the same guideline calculations as those utilized by the first sentencing court. Defendant appealed the second sentence, arguing that

the evidence did not support the court's finding that $6.1 million had been laundered to promote the mail fraud scheme, that the court erroneously assessed a role enhancement, and that the post-*Booker* sentence was unreasonable.  The Eleventh Circuit affirmed defendant's sentence, denying a petition for rehearing as well.  (Doc. 339)  Following the Supreme Court's decision in *United States v. Santos*, 553 U.S. 507 (2008), defendant filed a petition for writ of certiorari seeking review of the second sentence.  The Supreme Court declined to grant review.  (Doc. 350)

On April 27, 2009, defendant filed the instant amended motion to vacate, set aside, or correct sentence (doc. 362) pursuant to 28 U.S.C. § 2255, alleging five grounds he believes require that his conviction and sentence be vacated or modified. Defendant asserts counsel was ineffective for failing to object to (1) the use of the 2000 version of the U.S. SENTENCING GUIDELINES MANUAL; (2) the court ordered forfeiture; and (3) the sentencing court's failure to make findings regarding ability to pay the fine.  By extension, defendant alleges that the cumulative errors of counsel constitute ineffective assistance.  Lastly, defendant argues that his sentence, in light of *Santos*, should have been calculated only in consideration of the "profits" derived from the mail fraud scheme.  Defendant requests that this court vacate his sentence and remand for resentencing under the 2003 version of the U.S. SENTENCING GUIDELINES MANUAL, considering only the "profits" derived from the underlying offense.

On December 14, 2010, defendant filed a "Motion to Amend § 2255 In Relation Back Under Fed. R. Civ. P. 15(c)(1)(B)" (doc. 392).  Defendant proposes two additional claims, arguing first that the holding of *Santos* renders invalid both the money laundering *conviction* and the jury's forfeiture determination.  Second,

defendant asserts counsel was ineffective for failing to object to the forfeiture of substitute assets, because, defendant contends, the government did not establish that as a result of any act or omission of the defendant the money derived from the crime was untraceable.  (Doc. 392, 1)  Conceding that the one-year limitation period imposed on section 2255 movants had lapsed, defendant urges the court to consider these newly asserted claims as dependent upon a common core of operative facts uniting them with the original claims.  (Doc. 392, 1)

## ANALYSIS

As a preliminary matter, the undersigned notes certain general rules applicable in section 2255 proceedings following direct appeals, as well as the distinction between review under section 2255 and direct appeal.  "Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding." *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994).  "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development."  *Id.*  "A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal."  *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001).  "Further, a § 2255 movant cannot argue as the causal basis for his failure to advance an argument on direct appeal that the argument only became known to the movant due to subsequent developments in the law."  *Castro v. United States*, 248 F. Supp. 2d 1170, 1174 (S.D. Fla. 2003) (citing *McCoy*, 266 F.3d at 1258).

Regarding the important difference between a section 2255 collateral challenge and direct review, "[i]t has long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). Relief should be granted only if the challenged sentence resulted from "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *See Hill v. United States*, 368 U.S. 424, 428 (1962).

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "First, the defendant must show that counsel's performance was deficient[,]" which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Second, the defendant must show that the deficient performance prejudiced the defense[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In applying *Strickland*, the court may dispose of an ineffective assistance claim if the defendant fails to carry his burden on either of the two prongs. *See* 466 U.S. at 697.

At the outset the court must weigh the merits of defendant's motion to amend with relation back to the original pleading (doc. 392). Defendant does not dispute that the one-year period of limitation applying to a motion under 28 U.S.C. § 2255 had already expired as of December 14, 2010, the date defendant filed the motion to amend his amended section 2255 motion (which, for purposes of this analysis, is the

"original" motion).  The court therefore must determine whether defendant is entitled to amend in relation back under FEDERAL RULE OF CIVIL PROCEDURE 15(c)(1)(B), which provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ."  *See Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000) ("'Relation back' causes an otherwise untimely claim to be considered timely by treating it as if it had been filed when the timely claims were filed.").

Interpreting the plain language of the rule, this Circuit has held that "for an untimely § 2255 claim to 'relate back' under Rule 15(c), the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings."  *Id.*  "Instead, in order to relate back, the untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'"  *Id.* (quoting *United States v. Pittman*, 209 F.3d 314 (4th Cir. 2000); *United States v. Duffus*, 174 F.3d 333 (3d Cir. 1999); *United States v. Craycraft*, 167 F.3d 451 (8th Cir. 1999)).  "The critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted."  *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993).

Guided by the foregoing precedent and the decisions discussed in *Davenport*, the court concludes that defendant's new claims did not arise from the same set of facts as his original claims, but arose from separate conduct and occurrences in type.  In his original section 2255 motion (doc. 362), defendant claimed, *inter alia*, that his sentence, in light of *Santos*, should have been calculated only in consideration of the

"profits" derived from the mail fraud scheme.  On this basis, defendant requested that this court vacate his sentence and remand for resentencing, considering only the "profits" derived from the underlying offense.  Defendant also originally claimed counsel was ineffective for not objecting to the court ordered forfeiture and petitioning for an order of restitution in its place.  In contrast, defendant's newly asserted claims are (1) that the *Santos* decision invalidates the money laundering conviction completely, as well as the jury's forfeiture determination, and (2) that counsel was ineffective for failing to object to the forfeiture of substitute assets in particular.

Although defendant's original section 2255 motion (doc. 362) challenges the legality of his *sentence* after *Santos*, his original motion does not question the integrity of the underlying money laundering *conviction*, and only challenges the forfeiture order on the grounds that he would have preferred restitution.  The original *Santos* claim thus concerns the proper calculation of defendant's sentence, whereas the proposed amended claims address the continuing viability, *vel non*, of the conviction and forfeiture order.  Regarding the new claim asserting counsel's failure to object to the forfeiture of substitute assets, defendant's original section 2255 motion contains no mention of any such challenge.  In fact, defendant originally claimed prejudice from counsel's failure to request a restitution penalty in place of forfeiture, citing the government's resulting discretion to access the substitute asset provision of 18 U.S.C. § 982(a)(1).  In so arguing, defendant expressed awareness of the eventuality he now complains of.  He therefore could have and should have raised any infirmities with the seizure of substitute assets but did not.  The court is persuaded that the original complaint did not give notice to the government of the

new claims now being asserted, *see Moore*, 989 F.2d at 1131, and that the new claims do not arise out of the same set of facts as defendant's original claims, but arose from separate conduct and occurrences in type, if not in time.  *See Davenport*, 217 F.3d at 1344.  Accordingly, the court concludes that the motion to amend in relation back (doc. 392) should be denied.

Having determined that defendant's proposed new claims will not be considered, the court turns next to the timely amended section 2255 motion (doc. 362).  Defendant alleges first that counsel, who was the same for trial and both appeals, rendered ineffective assistance by failing to object to the use of the 2000 version of the U.S. Sentencing Guidelines Manual (Guidelines).  Defendant believes that use of the 2003 Guidelines would have yielded a lower total offense level than that computed under the 2000 version.  Defendant argues that application of the 2000 version of section 2S1.1, which was amended in 2001, resulted in a total offense level of 35.  Had the probation officer applied the 2003 Guidelines, defendant concludes, the total offense level would have been calculated at a 31.  (Doc. 362, 16-17)

As a general rule, "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."  U.S. Sentencing Guidelines Manual § 1B1.11(a) (2003).  But "[i]f the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed."  *Id.* § 1B1.11(b)(1).  Because defendant was sentenced in August 2004, the court would have applied the 2003 Guidelines, unless such application would have violated the

*ex post facto* clause.  In fact, the probation officer who prepared the presentence report and calculated the total offense level testified that use of the 2003 Guidelines would violate the *ex post facto* clause.  Applying the 2003 Guidelines, the probation officer determined, would result in a total offense level of 39; under the previous version, defendant's total offense level was only 35.  (PSR para. 19, 21, 27)

Defendant plainly cannot establish that counsel's failure to object to the use of the 2000 Guidelines worked any prejudice to a fair or reliable outcome of the case. Granted, the outcome very well could have differed had defense counsel imposed the objection defendant now urges, and the court relied on the 2003 Guidelines.  The record, however, reveals that such a tactic would not have redounded to defendant's benefit.  The discrepancy between the total offense levels under the respective Guidelines—35 under the 2000 manual and 39 under the subsequent version—explains the court's reliance on the earlier sentencing guidelines. Defendant scored a more lenient total offense level than he otherwise would have under the 2003 Guidelines for which he now argues.  Martinelli thus fails to demonstrate the requisite prejudice to maintain a successful claim of ineffective assistance of counsel.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (requiring defendant to establish that "counsel's errors are so serious as to deprive him of a trial whose result is unfair or unreliable, not merely that the outcome would have been different") (citations omitted).

Defendant also argues that an amendment to the 2003 Guidelines Manual would have yielded a lesser upward adjustment for the value of the money involved in the offense.  "The pre-2001 amendment version of § 2S1.1 contained a graduated table that provided for an increase in the base offense level if the 'value of the funds

exceeded $100,000.'" *United States v. Paley*, 442 F.3d 1273, 1276 (11th Cir. 2006). In 2001, however, section 2S1.1 was amended. "The amended version . . . no longer uses 'the value of the funds' as a specific offense characteristic." *Id.* "Instead, § 2S1.1 now provides that the 'value of the laundered funds' should be used in determining the offense level." *Id.* (citing U.S. SENTENCING GUIDELINES MANUAL § 2S1.1(a)(2) (2004)). The commentary to the amended provision defines "laundered funds" to mean "the property, funds, or monetary instrument involved in the transaction, financial transaction, monetary transaction, transportation, transfer, or transmission in violation of" the money laundering statute. *See Paley*, 442 F.3d at 1276 (citing U.S. SENTENCING GUIDELINES MANUAL § 2S1.1 cmt. n.1).

As the government points out, though, defendant has overlooked that section 2S1.1(b)(2)(B) (providing for two-level offense enhancement for conviction under 18 U.S.C. § 1956) and section 2S1.1(b)(3) (providing for two-level offense enhancement for offense involving sophisticated money laundering) both may have applied under the 2003 Guidelines Manual. Defendant's calculations also fail to account for the operation of section 2B1.1(b)(8), which provides for an offense enhancement of two levels for certain types of misrepresentations, and section 2B1.1(b)(2)(C), which provides for an enhancement of six levels where the government can establish that the subject offense involved more than 250 victims. The affidavit filed in this matter by defense counsel (doc. 379-2) provides a persuasive (and factually unrebutted) showing that when properly calculated, the guideline sentence as determined by reference to the 2000 manual was the more advantageous of the options to defendant. Accordingly, defendant cannot satisfy the prejudice prong of the *Strickland* analysis, necessary to gain ultimate relief on this

claim of ineffective assistance of counsel.  *See* 466 U.S. at 687 (requiring a showing that the error was so serious as to deprive defendant of a "fair trial").

For his second point, defendant contends that counsel rendered ineffective assistance by failing to object to the order of forfeiture.  Defendant urges that restitution would have been the appropriate penalty pursuant to 18 U.S.C. § 3663A, which provides for mandatory restitution to the victims of certain crimes.  Martinelli asserts that counsel's failure to secure an order of restitution, rather than forfeiture, allowed the government to access the substitute asset provision of 18 U.S.C. § 982(a)(1), which provides for the seizure of "any property, real or personal, involved in [the money laundering] offense, or any property traceable to such property."  The government, according to defendant, was thereby able to seize property owned by Martinelli's daughter and wife, because money obtained through the supposed business venture had been reinvested in the business.  (Doc. 362, 20-21)

Defendant, without supporting legal authority, surmises he had an option between forfeiture or paying restitution.  As defense counsel's affidavit recognizes, however, the indictment charged a forfeiture count, the jury returned a special forfeiture verdict against defendant, and the sentencing court ordered a criminal forfeiture.  Martinelli cites no authority to support the notion that a defendant, upon sentencing, may choose either restitution or an order of forfeiture.  I am unable to verify the legal viability of such a proposition.  Because defendant cannot demonstrate that counsel acted unreasonably in declining to raise the forfeiture issue at trial or on appeal, this claim of ineffective assistance of counsel must fail.  *See Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983) ("Even if in retrospect

the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it.").

Defendant argues next that counsel was ineffective for failing to raise on appeal the sentencing court's failure to make findings regarding Martinelli's ability to pay a fine. Citing 18 U.S.C. § 3572, defendant maintains that the statute requires the court, prior to imposing a fine, to make findings that the defendant has the ability, or in the future will become able, to pay the contemplated penalty. Despite his purported multiple requests that appellate counsel address the issue, defendant complains that counsel declined to brief the issue on appeal. (Doc. 362, 13-14)

"The Sentencing Guidelines require courts to 'impose a fine in all cases, except where the *defendant establishes* that he is unable to pay and is not likely to become able to pay any fine.'" *United States v. Hernandez*, 160 F.3d 661, 665 (11th Cir. 1998) (quoting U.S. Sentencing Guidelines Manual § 5E1.2(a)). "It is clear from section 5E1.2 that the burden is on the defendant to prove an inability to pay the fine." *Id.* "If the sentencing court concludes that a fine is appropriate, the Guidelines Manual lists several factors it should consider in determining the amount of the fine." *Id.* "Circuits are split on whether a court must make specific factual findings with respect to these factors." *Id.* (citing *United States v. Lombardo*, 35 F.3d 526, 529 (11th Cir.1994)). "While some circuits require that the district court make specific findings," the Eleventh Circuit does "not require the sentencing court to make specific findings of fact with respect to the Sentencing Guideline factors as long as 'the record reflect[s] the district court's consideration of the pertinent factors prior to imposing the fine.'" *Id.* at 665-66 (quoting *Lombardo*, 35 F.3d at 530). "[W]hen the

record provides no guidance as to the court's reason(s) for imposing a fine, we must remand the case so that the necessary factual findings can be made." *Id.* at 666.

Despite counsel's assurances to the probation officer that defendant would submit a financial statement to aid the preparation of a presentence report, Martinelli did not do so.  (PSR para. 47)  The probation officer thus indicated that he could not assess whether defendant had the ability to satisfy the financial obligations arising from his prosecution.  (PSR para. 49)  The sentencing court ruled specifically that the burden fell on defendant to prove inability to pay.  (Doc. 239, 49-50)  Recalling evidence that much of the money taken in by GBS had been spent to furnish an opulent lifestyle for defendant and his family, as well as defendant's representations that he could procure $500,000 in bond monies, the court imposed a $150,000 fine. (Doc. 239, 51-52)

In an affidavit attached to the government's response, one of defendant's lawyers, Janice Singer-Capek, explains the reasoning behind the decision to withhold a financial statement.   According to Singer-Capek, defendant agreed with his attorneys that he would not provide a financial statement, to avoid scrutiny over assets belonging to his family.   Singer-Capek noted the apparent belief of the government and court that defendant was the true owner of certain assets and entities owned or controlled by defendant's daughter.  (Doc. 379-3, para. 7)  Citing the treatment of defendant's wife, who received an obstruction of justice enhancement to her sentence for providing what the government concluded was a fraudulent financial statement, Singer-Capek professed her belief that defendant, too, could face an increased sentence under the U.S. SENTENCING GUIDELINES MANUAL should Martinelli fail to provide a financial statement including the assets and entities in his

daughter's name.  Singer-Capek asserted that she discussed such considerations with defendant, who agreed that no statement should be provided.  (Doc. 379-3, para. 7)

Having failed to provide a financial statement, defendant could not satisfy his burden to prove an inability to pay the fine.  *See Hernandez*, 160 F.3d at 665.  Nor can defendant establish that counsel's decision to withhold the financial statement was not reasonable.  Apparently unwilling to concede ownership of various assets, defendant faced the same sort of sentence enhancement as that visited upon his wife for making intentional misrepresentations concerning the family's financial standing. In this posture, defense counsel made a reasonable, strategic determination, possibly insulating her client from additional time in prison.  Accordingly, the undersigned does not find that counsel's performance was deficient in this regard.  *See Gordon v. United States*, 519 F.3d 1291, 1301 (11th Cir. 2008) (citing the "'strong presumption that counsel's performance was reasonable and adequate'" and requiring a petitioner seeking to overcome the presumption to "'establish that no competent counsel would have taken the action that his counsel did take'") (citations omitted).

Defendant also complains that appellate counsel should have alleged error in the imposition of the fine.  Defendant asserts that he specifically requested counsel to raise this issue on appeal, citing "numerous phone calls and letters."  (Doc. 362, 14)  Appellate counsel responds that he did not find pursuing an appeal of the fine strategically prudent, "considering the meritorious issues . . . raised in the initial appeal." (Doc. 379-2, para. 5)  As explained, defendant's challenge to the imposition of a fine stood virtually no chance at success.  On the advice of counsel, provided in the face of his own insistence to not include certain family assets, defendant declined to provide the evidence necessary to prove his alleged inability to pay a fine.  Because

defendant was not likely to prevail on this issue on appeal, counsel acted reasonably to forego this point and focus the court's attention on issues of arguable merit.  *See Shere v. Sec'y, Fla. Dep't of Corr.*, 537 F.3d 1304, 1311 (11th Cir. 2008) (agreeing that "appellate counsel is not ineffective for failing to raise a meritless issue on appeal"); *Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them.").

Defendant next asserts that the additional, cumulative errors of counsel constitute ineffective assistance.  The enumerated errors noted by defendant are: (1) counsel failed to object to, or raise on appeal, leading questions posed by the government; (2) counsel failed to call witnesses or present evidence on Martinelli's behalf; (3) appellate counsel failed to raise the denial of a request for bifurcated verdict from the jury in the forfeiture proceedings; (4) counsel failed to object to, or raise on appeal, the sentencing court's consideration of conduct not relevant to the charged offense; and (5) counsel failed to object to the court's construction of the term "proceeds," as it pertains to money laundering under 18 U.S.C. § 1956.  (Doc. 362, 24)  Defendant believes that the foregoing errors, in combination, worked to deprive him of the legal assistance guaranteed by the Sixth Amendment.

Generally speaking, defendant's allegations of cumulative error may be dismissed as conclusory and unsupported by reference or citation to the record. Defendant contends that counsel erred by not objecting to the government's leading questions, but does not identify the substance of the alleged questions or where in the record they may be found.  Such vague, bare assertions do not allow this court to discern either the deficient performance of counsel or prejudice to the outcome of defendant's case necessary to prevail under *Strickland*.  *See Wilson v. United States*,

962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient." (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991))). Similarly, defendant argues that counsel failed to call witnesses or present evidence on his behalf, but does not develop the substance of the omitted evidence or its importance in the greater context of the case. Accordingly, defendant does not allow this court to afford relief on a claim of ineffective assistance of counsel. *See Powell v. Allen*, 602 F.3d 1263, 1275 (11th Cir. 2010) (denying relief on ineffective assistance of counsel claim where defendant asserted that trial counsel should have obtained testimony of teachers or school records, because "Powell did not allege . . . what any such records would show other than to make the conclusory allegation that such records would have revealed 'numerous mitigating circumstances'"). Further, defendant asserts that counsel failed to object to, or raise on appeal, the sentencing court's consideration of conduct not relevant to the charged offense. Again, defendant declines to provide specifics or make any showing of prejudice to the outcome of the matter. Because defendant failed to provide factual substantiation for this speculative assertion, the claim must fail. *See id*; *Wilson v. United States*, 962 F.2d at 998.

In his claim of cumulative error, defendant also urges that appellate counsel failed to raise the denial of a request for bifurcated verdict from the jury in the forfeiture proceedings. In a sworn affidavit submitted in conjunction with the government's response, counsel principally responsible for defendant's appeals could cite "no provision of law that requires the court to submit special interrogatories to the jury on the issue of 'promotion' versus 'concealment' in a money laundering case." (Doc. 379-2, 4) Having reviewed the relevant case law, the undersigned is of

the opinion that appellate counsel is correct. *See, e.g., United States v. Felts*, 579 F.3d 1341, 1344 (11th Cir. 2009) ("[I]t is permissible for district courts to submit 'promotional money laundering' and 'concealment money laundering' as a single charge on a general verdict form.").  In light of such decisions, defendant cannot establish that counsel's performance was inadequate in this regard.  *See Shere*, 537 F.3d at 1311 (agreeing that "appellate counsel is not ineffective for failing to raise a meritless issue on appeal"); *Ladd*, 864 F.2d at 110 ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them.").  As will be shown, defendant's claim that counsel was deficient in failing to object to the court's construction of the term "proceeds," as it pertains to money laundering under 18 U.S.C. § 1956, is also without merit.  In sum, defendant's claim of cumulative error affords no basis for relief.

For his final point, defendant argues that his sentence for conspiring to launder money must be vacated in light of the Supreme Court's recent decision in *United States v. Santos*, 553 U.S. 507, 509-14 (2008).  Defendant cites *Santos* for the proposition that the government, having leveled a charge of money laundering under 18 U.S.C. § 1956(a)(1), must prove that the supposedly illicit transactions involved the "profits," rather than the "gross receipts," derived from the underlying offense (in this instance, mail fraud).  Defendant contends that he must be resentenced, because the court impermissibly sentenced him in consideration of the gross receipts generated by the mail fraud scheme.  (Doc. 362, 24)

Defendant simply misreads the holding of *Santos*, which is especially restrictive in scope.  "The narrow holding in *Santos*, at most, was that the gross receipts of an unlicensed gambling operation were not 'proceeds' under section 1956

. . . ." *United States v. Demarest*, 570 F.3d 1232, 1242 (11th Cir. 2009).  Similarly, in *King v. Keller*, the Eleventh Circuit held that *Santos* did not apply where the defendant's "money laundering convictions were based on his participation in 'a cash rental 'ponzi scheme' and a related treasury bill leasing program.'" *See* 372 F. App'x 70, 73 (11th Cir. 2010).  One finds no paucity of other cases that have rejected the application of the *Santos* profits test to money laundering offenses stemming from crimes other than gambling.  *See, e.g.*, *United States v. Jennings*, 599 F.3d 1241, 1252 (11th Cir. 2010) (rejecting defendant's claim that, because the government failed to prove money at issue was *profits* of illegal activity, he could not be convicted of money laundering in connection with fraud and conspiracy convictions arising from scheme to sell fraudulent workers' compensation insurance); *Mignott v. United States*, Nos. 09-60805-CIV, 04-60186-CR-UNGARO, 2010 WL 2035105, at *8 (S.D. Fla. May 3, 2010) (denying relief "because the limited holding in *Santos* does not apply to Mignott's conviction for conspiring to launder money which is the proceeds of Medicare fraud"); *United States v. Morris*, No. 6:09-16-S-DCR, 2010 WL 1049936 (E.D. Ky. Mar. 19, 2010) (holding *Santos* inapplicable where the predicate offenses were bribery and extortion); *United States v. Poulin*, 690 F. Supp. 2d 415 (E.D. Va. 2010) (holding that *Santos* does not apply to health care fraud offenses); *Arnaiz v. Hickey*, No. CV208-97, 2009 WL 2971638, *3 (S.D. Ga. Sept. 16, 2009) (limiting *Santos* to gambling cases and declining to apply profits test where the offense involves laundering of receipts of Medicare fraud); *United States v. Prince*, 627 F. Supp. 2d 863, 868-72 (W.D. Tenn. 2008) (limiting *Santos* to gambling cases and declining to apply profits test where the offense involves laundering of receipts of health care fraud).  Because defendant is not accused of laundering gross receipts

derived from an unlicensed gambling operation, *Santos* is unavailing in this instance.[1]
*See Demarest*, 570 F.3d at 1242.

Pursuant to 28 U.S.C. § 2255(b), this court must conduct an evidentiary hearing
upon defendant's motion to vacate sentence, "[u]nless the motion and the files and
records of the case conclusively show that the prisoner is entitled to no relief . . . ."
In support of such motion, however, defendant must proffer credible and specific
evidence entitling him to relief.  *See Drew v. Dep't of Corr.*, 297 F.3d 1278, 1293
(11th Cir. 2002) (referring to "our clear precedent establishing that such allegations
are not enough to warrant an evidentiary hearing in the absence of any specific factual
proffer or evidentiary support"); *Hill v. Moore*, 175 F.3d 915, 922 (11th Cir. 1999)
("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of
counsel claim], petitioner must proffer evidence that, if true, would entitle him to
relief.").  Here, defendant's claims are without merit or otherwise refuted by the
record.  This court  may therefore deny the requested relief without an evidentiary
hearing.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) ("A petitioner
is *not* entitled to an evidentiary hearing . . . when his claims are merely conclusory

---

[1] The foregoing analysis demonstrates that *Santos* is not applicable to defendant's conduct
and thus offers no substantive legal basis for relief.  In any event, defendant's *Santos* claim
would appear to be barred, because defendant did not raise the claim on direct review.  *See Mills*,
36 F.3d at 1055 ("Generally speaking, an available challenge to a criminal conviction or sentence
must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255
proceeding."); *Castro*, 248 F. Supp. 2d at 1174 ("[A] § 2255 movant cannot argue as the causal
basis for his failure to advance an argument on direct appeal that the argument only became
known to the movant due to subsequent developments in the law.").  Nevertheless, because the
United States has not raised the procedural bar, the undersigned will rely upon the substantive
analysis of the claim, as set forth above, to deny relief on this issue.

allegations unsupported by specifics or contentions that in the face of the record are wholly incredible.") (quotation marks omitted).

Accordingly, it is ORDERED:

Defendant's motion to amend in relation back (doc. 392) is DENIED.

And it is respectfully RECOMMENDED:

That the amended motion to vacate, set aside, or correct sentence (doc. 362) pursuant to 28 U.S.C. § 2255 be DENIED.

At Pensacola, Florida, this 30th day of November, 2011.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).